## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| DAVID TOM, individually and on behalf of all others similarly situated, | :   CIVIL ACTION FILE NO. |
|     Plaintiff, | : |
| v. | :   **COMPLAINT – CLASS ACTION** |
| ELLINGTON SERVICE CORPORATION, and 33 MILE RADIUS LLC D/B/A EVERCONNECT AND KEYWORD CONNECTS, | :   **JURY TRIAL DEMANDED** |
|     Defendants. | : |

Plaintiff DAVID TOM (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.    "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from

telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2.      "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those

persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.* at 649-50.

3.     Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including his own.

4.     Tom also alleges that Defendants use automated systems to make telemarketing calls from and into Florida, and that by doing so, Defendants have violated the provisions of the Florida Telephone Solicitations Act, Fla. Sta § 501.059.

5.     Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

6.     A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and FTSA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

7.    Plaintiff David Tom is an individual located in the Middle District of Florida, in Brevard County.

8.    Defendant Ellington Service Corporation, which does business under the name Ellington Air Conditioning & Heat, is a Rockledge, FL, Brevard County based air conditioning company that uses illegal telemarketing calls to solicit business in this District.

9.    Defendant 33 Mile Radius LLC d/b/a EverConnect and Keyword Connects is a Massachusetts-based telemarketer and lead generator that makes telemarketing calls into this District for Defendant Ellington.

## JURISDICTION AND VENUE

10.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court has supplemental jurisdiction over the state law claims since they relate to the same telemarketing campaign.

11.    This Court has general personal jurisdiction over Ellington because it has its principal place of business in this State. This Court has specific personal jurisdiction over 33 Mile because it contracted with Ellington to place the illegal calls at issue to Florida based area codes, including the famous 321 area code for Florida's space coast.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the telephone calls at issue were sent into this District.

## TCPA BACKGROUND

The Enactment of the TCPA and its Regulations

13.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

14.     Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

15.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

16.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

17.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on

whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The Florida Telephone Solicitations Act

18.    The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

19.    It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

20.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

21.    Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

## **FACTUAL ALLEGATIONS**

22.    Defendants are "persons" as the term is defined by 47 U.S.C. § 153(39).

23.    Plaintiff Tom is also a "person" as the term is defined by 47 U.S.C. § 153(39).

24.    At no point has the Plaintiff consented to receive telemarketing calls from the Defendants regarding the sale of goods or services, including HVAC services, prior to receiving the automated calls at issue.

<u>Calls to Plaintiff</u>

25.    Mr. Tom's residential telephone number has a 321 area code.

26.    That telephone number is a residential telephone line used by Mr. Tom for personal calls and for personal, family, and household use.

27.    The telephone number is a residential number because it is assigned to a telephone exchange service for consumers, not a telephone exchange service for businesses.

28.    That telephone number is not associated with a business.

29.    Mr. Tom registered his residential telephone number on the National Do Not Call Registry for more than a year prior to the calls at issue, and it has remained on the Registry since that time.

30.    Despite that, Mr. Tom received at least 3 automated calls from the caller ID 888-660-3882.

31.    The first such call occurred on July 5, 2024, and started with silence. The Plaintiff said "Hello?" multiple times before an individual came on the line, who also said "Hello?" and then disconnected the call from the remote end.

32.    Indeed, NoMoRobo, which won the federal government's award for detecting spam calls, identified the number that called as a robocaller. *(888) 660-3882 is a Robocall*, NOMOROBO (Sept. 4, 2024), https://www.nomorobo.com/lookup/888-660-3882.

33.    Thinking the call may be important, the Plaintiff called the 888-660-3882 number back.

34.    When the Plaintiff called the number back, he was connected to an individual who stated that he was looking to speak with "Evan Hightower" as a result of a service request for HVAC and that that was the reason for why "we reached out to you."

35.    The Plaintiff then asked who the caller was with. The caller confirmed that they were a "third-party company" and that "we do calls for Ellington Air Conditioning and Heat."

36.    When the Plaintiff asked who this "third-party company" was, the agent confirmed that he "work[s] for the marketing company that does call

screening for the AC provider," Defendant "Keyword Connects" out of Waltham, Massachusetts.

37.     The Plaintiff stated that "If I'm interested, I'll let you know. If I'm not interested, you won't hear back from me."

38.     Despite not expressing any interest, the Plaintiff received a missed call on July 8 from the same 888-660-3882 number.

39.     The Plaintiff called the number back and spoke with a representative, "Vanessa with Ellington Air Conditioning and Heating," who stated that she was following up on an "online request" for an HVAC project.

40.     The Plaintiff, knowing that he had not submitted such a request, pressed Vanessa as to what the online request says or why he was receiving calls. Vanessa then got defensive and did not provide the Plaintiff any information about any purported online request. Thereafter, Vanessa stated, "If somebody asks you do you have an issue with your HVAC, say no and move on with your day."

41.     The Plaintiff then stated not to call him.

42.     Thereafter, the Plaintiff received a final call on July 9 from the same caller ID, which he answered. During that call, the Plaintiff spoke with "Beatrice" "from Ellington Air Conditioning and Heat" who was calling "regarding your online request for your HVAC project."

43.    The Plaintiff reiterated that this was his third time asking Defendants not to call and "don't make it a fourth."

44.    The Plaintiff is not "Evan Hightower" nor does the Plaintiff know "Evan Hightower."

45.    "Evan Hightower" came to somehow be erroneously associated with the Plaintiff's telephone number on the internet as a result of a data breach.

46.    For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

47.    In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

48.    The FCC has instructed that sellers such as Ellington may not avoid liability by outsourcing telemarketing to third parties, such as 33 Mile:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be

required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned up).

49.    In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

50.    Ellington is liable for telemarketing calls placed by 33 Mile and transferred to Ellington to generate customers for Ellington, including the Plaintiff.

51.    Ellington was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and only sell them the interested ones. Indeed, it was interested in hiring a lead generator that would be willing to hide its involvement unless specifically pressed as to whether a lead generator was being used.

52.    To do so, it hired 33 Mile to orchestrate an *en masse* telemarketing campaign and only send it the interested clients.

53.    Ellington controlled the day-to-day activities of 33 Mile by providing the specific criteria for the leads it would accept and required its vendors, including

33 Mile, to adhere to those criteria.

54.    Ellington also authorized 33 Mile to use the Ellington name and authorized 33 Mile's employees to state that they were calling from Ellington and only reveal that they were 33 Mile's call screeners when pressed.

55.    Ellington authorized 33 Mile to use the Ellington trade name and trademarks, authorized 33 Mile representatives to state that they were going to receive services from Ellington and inform potentially interested persons that the calls were from Ellington.

56.    Ellington would not compensate 33 Mile for a call it made unless the leads it purchased met the criteria set by Ellington, including calls made subject to Ellington's audit.

57.    As such, Ellington controlled the content of 33 Mile's telemarketing and took steps to ensure it retained such control.

58.    Finally, Ellington could have terminated 33 Mile once it learned of 33 Mile's illegal marketing conduct.

59.    It did not.

60.    In fact, 33 Mile should know better than to violate the TCPA because it has been sued multiple times for violating the TCPA.

61.    Moreover, it appears that 33 Mile was calling in an automated fashion

using lists it obtained from a data breach, and not as the result of legitimate customers visiting a website and submitting their information.

62.    In this regard, Ellington hired 33 Mile, who is a habitual offender.

63.    Indeed, Ellington put complete trust in their third-party lead generator 33 Mile and directed them to handle all the illegal calling on its behalf and only transfer them customers that met criteria set by Ellington.

64.    Ellington could have investigated if the transfers it received were on the National Do Not Call Registry, whether the leads purchased were legitimate, whether the calls illegally used information obtained in a data breach, or if 33 Mile was using automated means to send them.

65.    It did not.

66.    Ellington hired 33 Mile without a proper investigation and did not terminate them when they were informed of 33 Mile's illegal calling conduct.

67.    As such, they knowingly ratified 33 Mile's conduct.

68.    Ellington accepted the Plaintiff's lead and then utilized it for a benefit by continuing to permit 33 Mile to promote Ellington's services to him.

69.    The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46.

Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

70.    Plaintiff never consented to receive calls from Defendants.

71.    Plaintiff never did business with the Defendants.

72.    Based on the foregoing, it is evident that Defendants mass-dial calls indiscriminately, including to numbers on the Do Not Call Registry using lists obtained from data breaches and other illegal sources.

73.    Plaintiff's privacy has been violated by the above-described telemarketing calls.

74.    Plaintiff never provided his consent or requested these calls.

75.    The aforementioned calls to the Plaintiff were unwanted.

76.    The calls were non-consensual encounters.

77.    In fact, the Plaintiff requested multiple times throughout various of the calls that the calls stop, but they did not stop.

78.    Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines,

rendering them unavailable for legitimate communication, including while driving,

working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

79.    Plaintiff brings this action on behalf of himself and the following

classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

80.    Plaintiff proposes the following Class definitions, subject to

amendment as appropriate:

> **National Do Not Call Registry Class**: All persons in the United States
> whose (1) residential telephone numbers were on the National Do Not Call
> Registry for at least 31 days, (2) but who received more than one
> telemarketing call from or on behalf of Defendants, (3) within a 12-month
> period, (4) at any time in the period that begins four years before the date of
> filing this Complaint to trial.

> **Florida Telephone Solicitation Act Autodial Class:** All persons in the U.S.,
> who, (1) received a telephonic sales call from Defendants made from or into
> Florida regarding HVAC goods and/or services, (2) using the same equipment
> or type of equipment utilized to call Plaintiff (3) since July 1, 2021.

81.    Plaintiff is a member of the classes.

82.    Excluded from the Classes are counsel, the Defendants, and any

entities in which the Defendants have a controlling interest, the Defendants' agents

and employees, any judge to whom this action is assigned, and any member of

such judge's staff and immediate family.

83.    Plaintiff and all members of the Classes have been harmed by the acts

of the Defendants, including, but not limited to, the invasion of their privacy,

annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

84.    This Class Action Complaint seeks injunctive relief and money damages.

85.    The Classes as defined above are identifiable through the Defendants' dialer records, other phone records, and phone number databases.

86.    Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members for each Class number, at minimum, in the hundreds based on the fact that recorded messages were used to send the calls.

87.    The joinder of all Class members is impracticable due to the size of the Classes and relatively modest value of each individual claim.

88.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

89.    There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

(a) Whether the Defendants systematically called numbers on the National Do Not Call Registry;

(b) whether the Defendants used automatic equipment as defined by Florida law to send telemarketing calls;

(c) whether Defendants made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

(d) whether Defendants' conduct constitutes a violation of the TCPA or FTSA;

(e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct; and

(f) whether Defendant Ellington is vicariously liable for calls placed by telemarketing vendors, including 33 Mile.

90.    Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes.  Plaintiff has no interests which are antagonistic to any member of the Classes.

91.    Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so.

92.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

93.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act**
**47 U.S.C. 227(b) on behalf of the National Do Not Call Registry Class**

94.     Plaintiff incorporates the allegations in paragraphs 1-93 as if fully set forth herein.

95.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff and the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

96.     The Defendants' violations were negligent, willful, or knowing.

97.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

## SECOND CAUSE OF ACTION

**Violation of the Florida Telephone Solicitation Act,**
**Fla. Stat. § 501.059**
**On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial**
**Class**

98.   Plaintiff repeats and incorporates the allegations set forth in the paragraphs 1-93 as if fully set forth herein.

99.   Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendants.

100.   It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

101.   A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

102.   Defendants failed to secure prior express written consent from Plaintiff and the Class Members.

103.   In violation of the FTSA, Defendants made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

104.   Defendants made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

105.   As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.   Injunctive relief prohibiting Defendants from calling telephone numbers advertising goods or services, except for emergency purposes, using a automated means in the future;

B.   That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation;

C.    An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing such Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

D.    Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: October 16, 2024          PLAINTIFF, individually and on behalf of all others similarly situated,

_/s/ Avi R. Kaufman_____
Avi R. Kaufman (FL Bar no. 84382)*
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Lead Counsel