## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| DAVID TOM, individually and on Behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>ELLINGTON SERVICE CORPORATION,<br>and 33 MILE RADOIS LLC D/B/A EVERCONNECT ANDKEYWORD CONNECTS,<br><br>   Defendants. | CIVIL ACTION FILE NO.<br>6:24-CV-01859-JSS-DCI<br><br>**DEFENDANT'S ANSWER TO FIRST AMENDED COMPLAINT – CLASS ACTION**<br><br>**Jury Trial Demanded** |

Defendant ELLINGTON SERVICE CORP. d/b/a ELLINGTON AIR CONDITIONING & HEAT ("Ellington"), by and through its attorneys and for its answer to Plaintiff's First Amended Complaint – Class Action, hereby states as follows:

### NATURE OF ACTION

1.   "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

**ANSWER:** The allegations of this paragraph are not factual allegations for which a response is required. To the extent a response is required, Ellington admits Paragraph 1 accurately quotes an excerpt from the case cited.

2. "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.* at 649-50.

**ANSWER:** The allegations of this paragraph are not factual allegations for which a response is required. To the extent a response is required, Ellington admits Paragraph 1 accurately quotes an excerpt from the case cited.

3. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including his own.

**ANSWER:** Ellington admits that Plaintiff, individually and as the proposed class representative for all others similarly situated, brings this action

against Defendants for alleged violations of the TCPA. Ellington denies the remaining allegations in this paragraph and that Plaintiff, individually and as class representative, is entitled to relief.

4.      Tom also alleges that Defendants use automated systems to make telemarketing calls from and into Florida, and that by doing so, Defendants have violated the provisions of the Florida Telephone Solicitations Act, Fla. Sta § 501.059.

**ANSWER:** Ellington admits that Plaintiff alleges that Defendants use automated systems to make telemarketing calls from and into Florida, and that by doing so, Defendants have violated the provisions of the FTSA. Ellington denies that Ellington uses automated systems to make telemarketing calls from and into Florida and that it has violated the FTSA.

5.      Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

**ANSWER:** Ellington admits that Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls, and denies the remaining allegations.

6.      A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and FTSA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**ANSWER:** Denied.

## PARTIES

7.      Plaintiff David Tom is an individual located in the Middle District of Florida, in Brevard County.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

8.      Defendant Ellington Service Corporation, which does business under the name Ellington Air Conditioning & Heat, is a Rockledge, FL, Brevard County based air conditioning company that uses illegal telemarketing calls to solicit business in this District.

**ANSWER:** Ellington admits that Ellington Service Corporation does business under the name Ellington Air Conditioning & Heat and is a Rockledge, FL, Brevard County based air conditioning company. Ellington denies that it uses illegal telemarketing calls to solicit business in this District.

9.      Defendant 33 Mile Radius LLC d/b/a EverConnect and Keyword Connects is a Massachusetts-based telemarketer and lead generator that makes telemarketing calls into this District for Defendant Ellington.

**ANSWER:** Ellington admits that lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

## JURISDICTION AND VENUE

10.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court has supplemental jurisdiction over the state law claims since they relate to the same telemarketing campaign.

**ANSWER:** The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is required, Ellington admits the allegations.

4

11.     This Court has general personal jurisdiction over Ellington because it has its principal place of business in this State. This Court has specific personal jurisdiction over 33 Mile because it contracted with Ellington to place the illegal calls at issue to Florida based area codes, including the famous 321 area code for Florida's space coast.

**ANSWER:** Ellington states that the allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is required, Ellington admits that the Court has general personal jurisdiction over it, but lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph and therefore denies them.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the telephone calls at issue were sent into this District.

**ANSWER:** Ellington states that the allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is required, Ellington admits the allegations.

## TCPA BACKGROUND

The Enactment of the TCPA and its Regulations

13.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

**ANSWER:** Admitted.

14.     Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

**ANSWER:** Ellington admits that this paragraph accurately quotes an excerpt from Section 227(c) of the TCPA.

15.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

**ANSWER:** The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is required, Ellington admits the allegations.

16.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

**ANSWER:** Ellington admits that this paragraph accurately quotes an excerpt from 47 C.F.R. § 64.1200(c)(2).

17.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**ANSWER:** The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is required, Ellington admits the allegations.

The Florida Telephone Solicitations Act

18.    The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. §501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

**ANSWER:** Admitted.

19.    It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection

and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

**ANSWER:** The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is required, Ellington admits the paragraph accurately quotes an excerpt from Fla. Stat. § 501.059(8)(a).

20.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

**ANSWER:** The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is required, Ellington admits the paragraph accurately quotes an excerpt from Fla. Stat. § 501.059(1)(i).

21.    Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

**ANSWER:** The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is required, Ellington admits the paragraph accurately quotes an excerpt from Fla. Stat. § 501.059(10)(a).

## FACTUAL ALLEGATIONS

22.    Defendants are "persons" as the term is defined by 47 U.S.C. § 153(39).

7

**ANSWER:** Ellington states that the allegations of this paragraph are a legal conclusion for which no response is required. To the extent a response is required, Defendant admits the allegations.

23.     Plaintiff Tom is also a "person" as the term is defined by 47 U.S.C. § 153(39).

**ANSWER:** Ellington states that the allegations of this paragraph are a legal conclusion for which no response is required. To the extent a response is required, Defendant admits the allegations.

24.     At no point has the Plaintiff consented to receive telemarketing calls from the Defendants regarding the sale of goods or services, including HVAC services, prior to receiving the automated calls at issue.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

Calls to Plaintiff

25.     Mr. Tom's residential telephone number has a 321 area code.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

26.     That telephone number is a residential telephone line used by Mr. Tom for personal calls and for personal, family, and household use.

**ANSWER:**  Denied.

27.    The telephone number is a residential number because it is assigned to a telephone exchange service for consumers, not a telephone exchange service for businesses.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

28.    That telephone number is not associated with a business.

**ANSWER:** Denied.

29.    Mr. Tom registered his residential telephone number on the National Do Not Call Registry for more than a year prior to the calls at issue, and it has remained on the Registry since that time.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

30.    Despite that, Mr. Tom received at least 3 automated calls from the caller ID 888-660-3882.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

31.    The first such call occurred on July 5, 2024, and started with silence. The Plaintiff said "Hello?" multiple times for almost 10 seconds before an individual came on the line, who also said "Hello?" and then disconnected the call from the remote end.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

32.     Indeed, NoMoRobo, which won the federal government's award for detecting spam calls, identified the number that called as a robocaller. *(888) 660-3882 is a Robocall*, NOMOROBO (Sept. 4, 2024), https://www.nomorobo.com/lookup/888-660-3882.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

33.     Thinking the call may be important, the Plaintiff called the 888-660-3882 number back.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

34.     When the Plaintiff called the number back, he was connected to an individual who stated that he was looking to speak with "Evan Hightower" as a result of a service request for HVAC and that that was the reason for why "we reached out to you."

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

35.     The Plaintiff then asked who the caller was with. The caller confirmed that they were a "third-party company" and that "we do calls for Ellington Air Conditioning and Heat."

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

36.    When the Plaintiff asked who this "third-party company" was, the agent confirmed that he "work[s] for the marketing company that does call screening for the AC provider," Defendant "Keyword Connects" out of Waltham, Massachusetts.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

37.    The Plaintiff stated that "If I'm interested, I'll let you know. If I'm not interested, you won't hear back from me."

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

38.    Despite not expressing any interest, the Plaintiff received a missed call on July 8 from the same 888-660-3882 number.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

39.    The Plaintiff called the number back and spoke with a representative, "Vanessa with Ellington Air Conditioning and Heating," who stated that she was following up on an "online request" for an HVAC project.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

40.    The Plaintiff, knowing that he had not submitted such a request, pressed Vanessa as to what the online request says or why he was receiving calls. Vanessa then got defensive and did not provide the Plaintiff any information about any purported online request. Thereafter, Vanessa stated, "If somebody asks you do you have an issue with your HVAC, say no and move on with your day."

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

41.    The Plaintiff then stated not to call him.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

42.    Thereafter, the Plaintiff received a final call on July 9 from the same caller ID, which he answered. During that call, which started with the same pregnant pause as the first, the Plaintiff spoke with "Beatrice" "from Ellington Air Conditioning and Heat" who was calling "regarding your online request for your HVAC project."

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

43.    The Plaintiff reiterated that this was his third time asking Defendants not to call and "don't make it a fourth."

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

44.    This pregnant pause indicates that, like on the first call, nobody was on the line until the Plaintiff answered the call, and was then connected with a representative, thus plausibly supporting the Plaintiff's contention that the call was placed using automated equipment for the selection and dialing of telephone numbers in violation of the FTSA.

**ANSWER:** Denied.

45.    These combined facts give rise to the plausible inference that an automated system for the selection and dialing of telephone numbers within the meaning of the FTSA was used to place the calls at issue.

**ANSWER:** Denied.

46.    For the avoidance of any doubt, all the automated calls were placed using an automated system, but they did not play pre-recorded messages. Rather, the system used by the Defendant violates the FTSA because it uses a computer program to select and dial calls *en masse*, waits for someone to answer, and only then connects the call to a human being. It will otherwise disconnect the call, including if a voicemail answers or if a human being on Defendant's end is not available for whatever reason.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

47.    As such, the connection to a human being after 10 seconds in the first call, and that human's subsequent confusion as to whether or not the call was even connected, demonstrates that a computer, not a human, dialed the first call as an initial matter.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

48.    This technology is known as a "predictive dialer," so named because it predicts when agents may be available and when customers may be available, and varies the automatic dialing rate to accommodate for both ends' traffic patterns.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

49.    However, a predictive dialer is only as powerful as its programming, and if the dialer is not properly programmed, or if call volumes surge, such dialers are typically, and illegally, programmed to disconnect, or abandon, the call if it is not able to connect to a human agent in a certain time.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

50.    Upon information and belief, this is what happened with the second call that was placed to the Plaintiff.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

51.    Relatedly, such systems will not perfectly time the individual's connection with that of a call center representative. Accordingly, there is usually some variable delay once a called party answers before a call center representative also answers and is able to speak.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

52.    Upon information and belief, this is what happened with the first and third calls that were placed to the Plaintiff, and what accounts for the pauses on both calls.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

53.    Moreover, the inability to process or honor repeated do-not-call requests is another hallmark of automated systems.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

54.    The Plaintiff is not "Evan Hightower" nor does the Plaintiff know "Evan Hightower."

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

55.    "Evan Hightower" came to somehow be erroneously associated with the Plaintiff's telephone number on the internet as a result of a data breach.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

56.    For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

**ANSWER:** Ellington states that the allegations of this paragraph are a

legal conclusion to which no response is required. To the extent a response is

required, Defendant admits the paragraph accurately quotes an excerpt from *In*

*re Rules and Regulations Implementing the Telephone Consumer Protection Act*,

10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

57.    In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

**ANSWER:** Ellington states that the allegations of this paragraph are a

legal conclusion to which no response is required. To the extent a response is

required, Defendant denies the allegations.

58.    The FCC has instructed that sellers such as Ellington may not avoid liability by outsourcing telemarketing to third parties, such as 33 Mile:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned

up).

**ANSWER:** Ellington states that the allegations of this paragraph are a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations.

59.    In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

**ANSWER:** Ellington states that the allegations of this paragraph are a legal conclusion to which no response is required. To the extent a response is required, Defendant admits the paragraph accurately quotes an excerpt from the cited case.

60.    Ellington is liable for telemarketing calls placed by 33 Mile and transferred to Ellington to generate customers for Ellington, including the Plaintiff.

**ANSWER:** Denied.

61.    Ellington was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and only sell them the interested ones. Indeed, it was interested in hiring a lead generator that would be willing to hide its involvement unless specifically pressed as to whether a lead generator was being used.

**ANSWER:** Denied.

62.    To do so, it hired 33 Mile to orchestrate an *en masse* telemarketing campaign and only send it the interested clients.

**ANSWER:** Ellington admits that it has worked with 33 Mile and denies the remaining allegations in this paragraph.

63.     Ellington controlled the day-to-day activities of 33 Mile by providing the specific criteria for the leads it would accept and required its vendors, including 33 Mile, to adhere to those criteria.

**ANSWER:** Denied.

64.     Ellington also authorized 33 Mile to use the Ellington name and authorized 33 Mile's employees to state that they were calling from Ellington and only reveal that they were 33 Mile's call screeners when pressed.

**ANSWER:** Denied.

65.     Ellington authorized 33 Mile to use the Ellington trade name and trademarks, authorized 33 Mile representatives to state that they were going to receive services from Ellington and inform potentially interested persons that the calls were from Ellington.

**ANSWER:** Denied.

66.     Ellington would not compensate 33 Mile for a call it made unless the leads it purchased met the criteria set by Ellington, including calls made subject to Ellington's audit.

**ANSWER:** Denied.

67.     As such, Ellington controlled the content of 33 Mile's telemarketing and took steps to ensure it retained such control.

**ANSWER:** Denied.

68.     Finally, Ellington could have terminated 33 Mile once it learned of 33 Mile's illegal marketing conduct.

**ANSWER:** Denied.

69.     It did not.

**ANSWER:** Denied.

70.     In fact, 33 Mile should know better than to violate the TCPA because it has been sued multiple times for violating the TCPA.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

71.    Moreover, it appears that 33 Mile was calling in an automated fashion using lists it obtained from a data breach, and not as the result of legitimate customers visiting a website and submitting their information.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

72.    In this regard, Ellington hired 33 Mile, who is a habitual offender.

**ANSWER:** Denied.

73.    Indeed, Ellington put complete trust in their third-party lead generator 33 Mile and directed them to handle all the illegal calling on its behalf and only transfer them customers that met criteria set by Ellington.

**ANSWER:** Denied.

74.    Ellington could have investigated if the transfers it received were on the National Do Not Call Registry, whether the leads purchased were legitimate, whether the calls illegally used information obtained in a data breach, or if 33 Mile was using automated means to send them.

**ANSWER:** Denied.

75.    It did not.

**ANSWER:** Denied.

76.    Ellington hired 33 Mile without a proper investigation and did not terminate them when they were informed of 33 Mile's illegal calling conduct.

**ANSWER:** Denied.

77.    As such, they knowingly ratified 33 Mile's conduct.

**ANSWER:** Denied.

78.    Ellington accepted the Plaintiff's lead and then utilized it for a benefit by continuing to permit 33 Mile to promote Ellington's services to him.

**ANSWER:** Ellington states that the allegations of this paragraph are legal conclusions for which no response is required. To the extent a response is required, Defendant denies the allegations.

79.    The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

**ANSWER:** Ellington states that the allegations of this paragraph are a legal conclusion to which no response is required. To the extent a response is required, Ellington admits the paragraph accurately quotes excerpts from the cited case.

80.    Plaintiff never consented to receive calls from Defendants.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

81.    Plaintiff never did business with the Defendants.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

82.    Based on the foregoing, it is evident that Defendants mass-dial calls indiscriminately, including to numbers on the Do Not Call Registry using lists obtained from data breaches and other illegal sources.

**ANSWER:** Denied.

83.    Plaintiff's privacy has been violated by the above-described telemarketing calls.

**ANSWER:** Denied.

84.    Plaintiff never provided his consent or requested these calls.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

85.    The aforementioned calls to the Plaintiff were unwanted.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

86.    The calls were non-consensual encounters.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

87.    In fact, the Plaintiff requested multiple times throughout various of the calls that the calls stop, but they did not stop.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a

belief as to the truth or falsity of the allegations in this paragraph and therefore

denies the allegations.

88.    Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

**ANSWER:**    Denied.

## CLASS ACTION ALLEGATIONS

89.    Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

**ANSWER:** Ellington admits that Plaintiff brings this action on behalf of

himself and the following classes (the "Classes") pursuant to Federal Rule of

Civil Procedure 23. Ellington denies that Plaintiff is entitled to relief,

individually or on behalf of any class.

90.    Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendants, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

> **Florida Telephone Solicitation Act Autodial Class:** All persons in the U.S., who, (1) received a telephonic sales call from Defendants made

from or into Florida regarding HVAC goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff (3) since July 1, 2021.

**ANSWER:** Ellington admits that Plaintiff proposes the Class definitions set forth in the paragraph, and denies that such classes are proper or certifiable.

91.    Plaintiff is a member of the classes.

**ANSWER:** Ellington states that the allegations of this paragraph are a legal conclusion to which no response is required. To the extent a response is required, Ellington denies the allegations.

92.    Excluded from the Classes are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

**ANSWER:** Admitted that Plaintiff proposes the exclusions set forth in the paragraph.

93.    Plaintiff and all members of the Classes have been harmed by the acts of the Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

**ANSWER:** Denied.

94.    This Class Action Complaint seeks injunctive relief and money damages.

**ANSWER:** Ellington admits that the Class Action Complaint seeks injunctive relief and money damages, but denies that Plaintiff is entitled to either.

95.    The Classes as defined above are identifiable through the Defendants' dialer records, other phone records, and phone number databases.

**ANSWER:** Denied.

96.    Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members for each Class number, at minimum, in the hundreds based on the fact that recorded messages were used to send the calls.

**ANSWER:** Denied.

97.    The joinder of all Class members is impracticable due to the size of the Classes and relatively modest value of each individual claim.

**ANSWER:** Denied.

98.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

**ANSWER:** Denied.

99.    There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

    (a)    Whether the Defendants systematically called numbers on the National Do Not Call Registry;

    (b)    Whether the Defendants used automatic equipment as defined by Florida law to send telemarketing calls;

    (c)    whether Defendants made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

    (d)    whether Defendants' conduct constitutes a violation of the TCPA or FTSA;

    (e)    whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct; and

(f)    whether Defendant Ellington is vicariously liable for calls placed by telemarketing vendors, including 33 Mile.

**ANSWER:** Ellington states that the allegations of this paragraph are a legal conclusion to which no response is required. To the extent a response is required, Ellington denies the allegations.

100.    Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

**ANSWER:** Denied.

101.    Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

102.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

**ANSWER:** Denied.

103.    The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**ANSWER:** Denied.

**FIRST CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**47 U.S.C. 227(b) on behalf of the National Do Not Call Registry Class**

104.    Plaintiff incorporates the allegations in paragraphs 1-104 as if fully set forth herein.

**ANSWER:** Ellington    incorporates    by    reference    its    answers    in

paragraphs 1–104 as if fully set forth herein.

105.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff and the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

**ANSWER:** Denied.

106.    The Defendants' violations were negligent, willful, or knowing.

**ANSWER:** Denied.

107.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

**ANSWER:** Denied.

**SECOND CAUSE OF ACTION**
**Violation of the Florida Telephone Solicitation Act,**
**Fla. Stat. § 501.059**
**On Behalf of Plaintiff and the Florida Telephone Solicitation Act**
**Autodial Class**

108.    Plaintiff repeats and incorporates the allegations set forth in the paragraphs 1-104 as if fully set forth herein.

**ANSWER:** Ellington repeats and incorporates the answers set forth in paragraphs 1–104 as if fully set forth herein.

109.   Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendants.

**ANSWER:** Ellington admits that Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendants, but denies that Plaintiff is entitled to relief.

110.   It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

**ANSWER:** Ellington states that the allegations of this paragraph do not call for a response. To the extent a response is required, Ellington admits the paragraph accurately quotes an excerpt from Fla. Stat. § 501.059(8)(a).

111.   A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

**ANSWER:** Ellington states that the allegations of this paragraph do not call for a response. To the extent a response is required, Ellington admits the paragraph accurately quotes an excerpt from Fla. Stat. § 501.059(1)(i).

112.   Defendants failed to secure prior express written consent from Plaintiff and the Class Members.

**ANSWER:** Ellington lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

113.    In violation of the FTSA, Defendants made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

**ANSWER:** Denied.

114.    Defendants made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

**ANSWER:** Denied.

115.    As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

**ANSWER:** Denied.

### PRAYER FOR RELIEF

**ANSWER:** Ellington denies that Plaintiff is entitled to the relief it requests.

––––––––––––––––––––

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof where it otherwise rests with Plaintiff, Ellington pleads the following Affirmative Defenses to Plaintiffs' Complaint.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff and/or the putative classes Plaintiff seeks to represent expressly consented to, ratified, and/or acquiesced in receiving the alleged calls that are the subject of this lawsuit.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims and/or the claims of the putative classes Plaintiff seeks to represent are barred, in whole or in part, by the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims and/or the claims of the putative classes are barred or limited because the alleged damages to Plaintiff and/or the putative classes were caused in whole or in part by the acts or omissions of third parties over which Ellington had and has no control of/over, and/or by the acts or omissions of Plaintiff and/or the putative class.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims and/or the claims of the putative classes are limited to the extent any calls that are alleged to have violated the TCPA or FTSA are exempt from liability under the TCPA, FTSA, and/or the rules and regulations proscribed

by the FCC and/or any applicable state regulations, including without limitation the Safe Harbor provisions of the TCPA's Do Not Call provisions.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff and/or the putative classes cannot state a claim against Ellington upon which relief can be granted because Ellington did not and does not make calls using an automatic telephone dialing system ("ATDS") Plaintiff appears to allege in the Complaint.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims and/or the claims of the putative classes are barred because the alleged calls that are the subject of this lawsuit complied with the requirements set forth in 47 C.F.R. § 64.1200 and/or any state counterpart.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims and/or the claims of the putative classes are barred or limited by the doctrine of estoppel.

## EIGHTH AFFIRMATIVE DEFENSE

The Complaint and each and every purported claim contained therein that Plaintiff seeks to allege are barred because any wrongdoing by Ellington, which Ellington denies, was caused by mistake.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims and/or the claims of the putative classes are barred because Plaintiff and/or the putative classes failed to mitigate their damages.

## TENTH AFFIRMATIVE DEFENSE

Ellington acted reasonably and in good faith at all material times based on all relevant facts and circumstances known by it at the time it acted.

## ELEVENTH AFFIRMATIVE DEFENSE

Ellington did not negligently, knowingly or willfully make the alleged calls that are the subject of this lawsuit in violation of the TCPA or FTSA.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims for injunctive relief, and/or the claims for injunctive relief of the putative classes, are barred, in whole or in part, because there is neither continuing harm nor any real and immediate danger of injury in the future to Plaintiff or the putative classes.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims and/or the claims of the putative classes fail, in whole or in part, because any purported damages and/or injury alleged to have been suffered by Plaintiff and/or the putative classes were self-induced and/or created by Plaintiff (or someone on Plaintiff's behalf) and/or the putative classes.

## <u>RESERVATION OF RIGHTS</u>

Ellington reserves the right to amend or add to its affirmative defenses upon

discovery of additional information or evidence or as justice so requires.

Dated: January 10, 2025        Defendant, ELLINGTON SERVICE CORP. d/b/a
                               ELLINGTON AIR CONDITIONING & HEAT

                               /s/ *Timothy A. Hudson*
                               Timothy A. Hudson (ARDC
                               #6271244)*
                               thudson @tdrlaw.com
                               Kathleen M. O'Brien (ARDC
                               #6300444)
                               kobrien@tdrlaw.com
                               Jeffrey L. Grinde, Jr.  (ARDC
                               #6345882)
                               jgrinde@tdrlaw.com
                               Tabet DiVito & Rothstein LLC
                               209 S. LaSalle Street, 7th Floor
                               Chicago, IL 60604
                               (312) 762-9450

                               *Lead Counsel

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 10, 2025, I caused **DEFENDANT'S ANSWER TO FIRST AMENDED COMPLAINT – CLASS ACTION** to be filed with the Clerk of the Court for the United States District for the Middle District of Florida using the CM/ECF system.  Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

_____/s/ Timothy A. Hudson___